# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2987

_____

| | | |
|---|---|---|
| National Solid Waste Management Association, | * * * | |
| Appellant, | * * | |
| v. | * * | Appeal from the United States District Court for the District of Minnesota. |
| | * | |
| Charles W. Williams, in his official capacity as Commissioner of the Minnesota Pollution Control Agency; Edward Garvey, in his official capacity as Director of the Minnesota Office of Environmental Assistance, | * * * * * * * | |
| | * | |
| Appellees. | * * | |

_____

Submitted: March 13, 1998
Filed: June 12, 1998

_____

Before BEAM and HEANEY, Circuit Judges and KOPF,[1] District Judge.

_____

BEAM, Circuit Judge.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, sitting by designation.

The National Solid Waste Management Association (the Association) appeals the district court's[2] grant of summary judgment against it in its action asserting that two Minnesota state statutes violate the Commerce Clause of the United States Constitution. Because we find that the Association lacks standing to challenge one statute, and find that the other statute passes constitutional muster, we affirm.

## I.    BACKGROUND

The disposition of garbage has become a popular subject of Commerce Clause analysis in recent years. See, e.g., Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, 115 F.3d 1372, 1376 n.2 (8th Cir.), cert. denied, 118 S. Ct. 629 (1997). This appeal is the latest round in a series of litigation spawned by the State of Minnesota's attempts to control the collection, processing, and disposal of waste. See id. at 1376-77.

Minnesota's legislature enacted the Waste Management Act in an attempt to manage solid waste disposal in that state. Among other things, the Act requires counties to implement comprehensive waste management plans.[3] See Minn. Stat. §§ 115A.46 and 473.803. Subdivision 5(b) of section 115A.46 (hereinafter "subdivision 5") then requires public entities to manage their solid waste in accordance with the relevant county plan. For example, if the county plan requires that garbage be hauled

---

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[3]These county plans must: (1) evaluate the waste generation habits of a county's population; (2) project the amount of waste that will be generated in the county over the next decade; (3) describe programs to assure that the county will meet statutorily-established recycling goals; and (4) analyze and propose environmentally preferred means of safely managing the county's projected waste stream. Minn Stat. §§ 115A.46, 115A.551, subd.6, 473.803, and 473.811.

to a specific facility, all public entities within the county must have their waste delivered to that facility.

If a public entity wishes to act contrary to the county plan, section 115A.471 applies. That section first requires a determination of whether the county's designated method is favored over the entity's proposed method according to a statutory list ranking waste management practices. See Minn. Stat. § 115A.02(b). If the county's method is preferred, the public entity must (1) determine the potential liability to the public entity and its taxpayers for managing the waste as the entity proposes; (2) develop a plan for managing that potential liability; and (3) submit that information to the state. See Minn. Stat. § 115A.471.

The Association is a non-profit trade association, whose members include Minnesota businesses which have waste collection and disposal contracts with various Minnesota public entities. The Association filed suit, naming Charles Williams, in his official capacity as Commissioner of the Minnesota Pollution Control Agency, and Edward Garvey in his official capacity as Director of the Minnesota Office of Environmental Assistance (the state). The Association alleged that subdivision 5 and section 115A.471 both contravene the Commerce Clause of the United States Constitution.

The district court granted summary judgment in favor of the state. It held that: (1) subdivision 5 does not violate the Commerce Clause; and (2) the Association lacks standing to challenge section 115A.471.[4] The Association appeals.

---

[4]The court also granted summary judgment sua sponte on the Association's claim under 42 U.S.C. § 1983, reasoning that the civil rights claim alleged no constitutional violation. That ruling has not been appealed.

## II.    DISCUSSION

### A.    Standing

"Standing is the constitutional requirement, imposed by the 'cases or controversies' provision of Article III, that a plaintiff must allege a judicially cognizable and redressable injury in order to pursue a lawsuit." Ben Oehrleins, 115 F.3d at 1378. In order to have standing, the Association must have suffered an injury in fact, must establish a causal connection between that injury and the Minnesota statutes it challenges, and must establish that this injury is redressable by this court. See Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003, 1016-17 (1998). Although the Association has met these requirements regarding subdivision 5, we find that it has not met them with regard to section 115A.471.

Subdivision 5 and section 115A.471 both refer to "public entities," but each defines that term differently. Subdivision 5 applies to:

> the state, an office, agency, or institution of the state, the metropolitan council, a metropolitan agency, the metropolitan mosquito control district, the legislature, the courts, a county, a statutory or home rule charter city, a town, a school district, another special taxing district, or any contractor acting pursuant to a contract with a public entity.

Minn. Stat. § 16B.122, subd. 1(f) (emphasis added). As "contractors," the Association's members are, therefore, constrained to act in accordance with the applicable county plan when they service the waste produced by their public clients. The statute thus constrains their actions and has consequently caused an injury in fact to the Association's members which can be redressed by this court. Therefore, as the state concedes, the Association has standing to challenge subdivision 5. See Carson

v. Pierce, 719 F.2d 931, 933 (8th Cir. 1983) (noting that association has standing as representative of its members).

However, section 115A.471 contains a different definition:

> "public entity" means the state; an office, agency, or institution of the state; the metropolitan council; a metropolitan agency; the metropolitan mosquito control district; the legislature; the courts; a county; a statutory or home rule charter city; a town; a school district; another special taxing district; or any other general or special purpose unit of government in the state.

Minn. Stat. § 115A.471(b).  Here, there is no mention of contractors acting on behalf of the state.  Under the terms of the statute, the Association's members are not public entities and the Association does not contend that it is arguing on behalf of a public entity.  Therefore, section 115A.471 imposes no obligations on the Association's members and cannot cause any injury in fact.

In an attempt to establish its claim of injury in fact, the Association submitted an affidavit from one of its members.  The affiant makes the general assertion that the cost to public entities of complying with 115A.471 "dwarf[s] the size of [our] public entity's waste disposal contracts."  However, even if this assertion were proved, it would not bolster the Association's position.  In order to establish an injury in fact, the Association must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).  The Association has not linked the fact that compliance with section 115A.471 is expensive for public entities with any "concrete and  particularized" harm to its members.  Id.  Although the affidavit reports that all of the business's "pre-existing contracts with public entities . . . have since been redrafted" to comply with section 115A.471, there is no allegation that renegotiating these contracts damaged a

"legally protected interest." Id. We cannot discern any injury in fact visited upon the Association by section 115A.471. We therefore hold that the Association lacks standing to challenge that statute.

### B.    Commerce Clause

The Commerce Clause provides that "Congress shall have Power . . . To regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause has a "negative" or "dormant" aspect which "has long been understood to . . . den[y] the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." Oregon Waste Sys., Inc. v. Department of Envtl. Quality, 511 U.S. 93, 98 (1994). Under the dormant Commerce Clause, statutes that require all waste generated within a geographic area to be disposed of at favored facilities, so-called "flow control ordinances," have been declared impermissible burdens on interstate commerce. See, e.g., C & A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383 (1994); Ben Oehrleins, 115 F.3d at 1384. The Association calls subdivision 5 a "public entities waste flow control law" and asserts that, as flow control, it is invalid.

To ascertain whether a state activity violates the dormant Commerce Clause, we begin by determining whether the state is "regulating" the market or merely "participating" in it. See Reeves, Inc. v. Stake, 447 U.S. 429, 436-39 (1980). If the state activity constitutes only market participation, then the Commerce Clause does not apply and our inquiry ends. See id. To ascertain whether a state is acting as a market participant, we ask "whether the state is actually participating in a narrowly defined market as a proprietor rather than simply regulating the actions of other private market participants." Chance Management, Inc. v. South Dakota, 97 F.3d 1107, 1111 (8th Cir. 1996), cert. denied, 117 S. Ct. 1083 (1997). The state argues that subdivision 5 merely establishes parameters for the state's purchase of waste disposal services. The Association responds that subdivision 5, in constraining the behavior of local

government units, regulates the behavior of market participants other than the state. We have not previously addressed the question of whether a local entity is equivalent to the state for purposes of market participant analysis. Other circuits have split on the issue.

The Seventh Circuit has held that when a state imposes requirements on local government without any state financial support or supervision, the state is not a participant in the project, but a regulator not within the market participant exception. W.C.M. Window Co. v. Bernardi, 730 F.2d 486, 495 (7th Cir.1984). By contrast, the Third Circuit found "no compelling analytical difference between a local government unit and central state agencies." Trojan Tech., Inc. v. Pennsylvania, 916 F.2d 903, 911 (3d Cir. 1990). "Both exist only through affirmative acts of the state. A municipality derives its authority from the state." Id. Two other circuits have adopted this reasoning. See Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel, 20 F.3d 1311, 1319-20 (4th Cir. 1994); Big Country Foods, Inc. v. Board of Educ., 952 F.2d 1173, 1179 (9th Cir. 1992).

We are persuaded by the reasoning of the Third Circuit. In this case, the state is performing as a market participant in directing the purchasing behavior of local governmental units. Under Minnesota state law, the legislature has unlimited authority over local governmental units. See Erickson v. Gram, 210 N.W. 616, 616 (Minn. 1926). All of the public entities covered by subdivision 5 are creations of the state which derive their power solely from the state. We are hard pressed to fathom how an entity created by the state, controlled by the state, and subject to the absolute power of the state, should be considered an independent entity when it undertakes to buy waste services on the open market. Public entities should not be considered independent from the state when they contract for the removal of their waste.

When a state contracts for garbage service, it does not run afoul of the Commerce Clause by dictating by contract where the contractor delivers the waste.

See SSC Corp. v. Town of Smithtown, 66 F.3d 502, 510 (2d Cir. 1995) ("to the extent that a state is acting as a market participant, it may pick and choose its business partners, its terms of doing business, and its business goals—just as if it were a private party"), cert. denied, 516 U.S. 1112 (1996). Subdivision 5 applies only to the waste generated by public entities and does not reach beyond those parties who, like the Association's members, "are actually and freely dealing with the state in its business enterprise."[5] Chance Management, 97 F.3d at 1112.

Because the state's actions here are performed as part of its role as a purchaser of waste disposal services, it is a mere market participant and the Commerce Clause does not apply. The state is, therefore, entitled to summary judgment in its favor on the Association's claims.

## III.  CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

---

[5]The Association posits in a footnote to its brief that applying the market participant doctrine to subdivision 5 opens the door to allow counties to resurrect flow control over private generators by simply taking over garbage collection as a public function. Indeed, there is evidence in the record that the Tri-County Solid Waste Management Commission is contemplating just such a step. We are aware that at least one circuit court has held that this would be constitutionally permissible. See Sal Tinnerello & Sons, Inc. v. Town of Stonington, No. 97-7919, 1998 WL 152981 (2d Cir. Apr. 3, 1998). The Supreme Court has recently warned courts to "put aside the natural urge to proceed directly to the merits of [an] important dispute and to settle it for the sake of convenience and efficiency." Raines v. Byrd, 117 S. Ct. 2312, 2318 (1997). Accordingly, we expressly decline any comment on the propriety of a governmental entity assuming public control of all waste disposal within its borders in order to resurrect a previously unconstitutional flow control ordinance.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.